IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  10-cv-02571-WYD

KAYDEL RICHARDSON,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for disability insurance benefits.  For the reasons stated below, this case is reversed and remanded for further fact finding.

I.    <u>INTRODUCTION AND BACKGROUND</u>

Plaintiff alleges disability beginning May 27, 2008, at which time she was 33 years old.  (Transcript ["Tr."] 36.)  She has a ninth-grade education and an extensive work history performing work at the light to heavy exertional levels.  (*Id.* 36-43.)  Despite her claimed disability, Plaintiff continued to work part-time as a stocker, which is classified as light work.  (*Id.* 42, 54.)  After a hearing before an Administrative Law Judge ["ALJ"], her claim for benefits was denied.  (Tr. 11-27.)

Under the sequential evaluation required by law, the ALJ found at step one of the decision that Plaintiff met the insured status requirements of the Social Security Act

through September 30, 2014, and that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 16).  This is despite the fact that Plaintiff was working part time.  (*Id.* at 16-17.)

At step two, the ALJ found that Plaintiff had severe impairments of:  "lupus; fibromyalgia; depressive disorder; pain disorder associated with both psychological factors and a general medical condition; and posttraumatic stress disorder."  (Tr. 17.)  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled an impairment listed at 20 C.F.R., Pt. 404, Subpt. P, App. 1.  (*Id.* 17-18.)  He found as to Plaintiff's mental impairments that she "has mild restrictions in activities of daily living, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence and pace, has experienced no episodes of decompensation."  (*Id.* 18.)

After examining the evidence, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment."  (Tr. 20.)  The ALJ also found that Plaintiff "retains the capacity to perform a full range of sedentary and light exertional activities."  (*Id.*)  More specifically, he found that Plaintiff has the residual functional capacity ["RFC"] "to perform work activities with the following limitations:  she can lift and carry 10 pounds frequently and 20 pounds occasionally; sit 2 hours at a time and

for 8 hours a day; and stand one hour at a time and walk 6 blocks at a time for a total

stand/walk of 2 hours a day." (Tr. 18.)  He further found that Plaintiff:

> can occasionally stoop and crouch; and frequently reach, handle, and
> finger.  She should avoid climbing ladders and scaffold, exposure to
> extremes of temperature, and to concentrated dust and fumes.  Mentally,
> the claimant can understand, remember and carry out routine and
> repetitive, but not complex, instructions.  She should avoid interacting with
> and serving the public, but can occasionally interact with supervisors and
> co-workers.

(*Id.*)

In making this assessment, the ALJ appeared to give weight to treating

rheumatologist Dr. Srock's opinions in a December 2009 questionnaire (Exhibit 8F),

which he found were generally consistent with the opinions of consultative examining

physician Dr. Graesser in Exhibit 6F and with the State agency findings in Exhibit 1F "in

indicating the claimant retains significant work capacity." (Tr. 22.)  The ALJ gave

"substantial weight" to the findings of the State agency medical consultant.  (*Id.* 24.)[1]

He stated that he considered the opinions found at Exhibits 9F and 10F from Daniel

Ran) and did "not find them persuasive because they are not supported by objective

findings or the record as a whole which includes well supported opinions from other

treating and examining physicians." (*Id.* 20.)  He gave "minimal weight" to Dr. Srock's

opinions in Exhibit 3F, a Lupus (SLE) RFC Questionnaire and letter from Dr. Srock

---

[1]  State agency physician Dr. Chambers found, among other things, that Plaintiff could frequently lift 10 pounds and occasionally lift 20 pounds, stand, sit and walk for 6 hours in an 8-hour workday, that she could only occasionally climb ramp/stairs, kneel, couch, and crawl, and that her handling was limited. (*Id.* 268-75, Ex. 1F.)

indicating what percentage of an eight hour day she believed Plaintiff could use her hand/fingers/arms related to certain activities.   (*Id.* 21.)

As to Plaintiff's mental impairments, the ALJ found "persuasive" consultative examiner Dr. Crockett's opinions in Exhibit 5F.  (Tr. 25.)  He found that those opinions "are generally consistent with the treating physician [Dr. Srock's] opinion as to the claimant's mental capacity in Exhibit 8F."  (*Id.*)

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work.  (Tr. 25.)  At step five, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform.  (*Id.* 26.)  Accordingly, he found that Plaintiff was not disabled.  (*Id.* 27.)

Plaintiff appealed the unfavorable decision to the Appeals Council (Tr. 6-7),who denied review.  (*Id.* 1-5.)  This exhausted Plaintiff's administrative remedies, and she filed a timely complaint in this Court.  The case is thus ripe for judicial review pursuant to 42 U.S.C. § 405(g).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and that he made errors of law.  Specifically, she argues that while fibromyalgia was considered a severe impairment, her symptoms were not given enough weight in determining the RFC.  She also argues that the ALJ erred by not accepting all of Dr. Srock's opinions, and that the ALJ did not accord adequate weight to the opinions of Dr. Srock and of treating provider Daniel Ryan, FNP-C.  Further, Plaintiff asserts that the ALJ erred in finding that she can perform sustained work activities full-time, and in finding that she is able to perform the basic mental demands of unskilled work.  Given

her reaching, handling, and fingering limitations, Plaintiff also argues that she is unable

to perform a full range of sedentary or light work.  Finally, she asserts that the ALJ did

not consider her medication's side effects.  I address these arguments below.

II.    ANALYSIS

    A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*

*v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of

evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d

802, 804 (10th Cir. 1988).   "Evidence is not substantial if it is overwhelmed by other

evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d

1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test,

there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*,

987 F.2d 1482, 1487 (10th Cir. 1993).

    B.    Whether the ALJ's Decision is Supported by Substantial Evidence

        1.    Whether the ALJ Erred in Not Properly Weighing the Opinions of
             the Treating Providers

Plaintiff has been seeing Dr. Kathleen Srock, a treating rheumatologist, since

March 7, 2007.  She presented to Dr. Srock with a four-year history of joint pain,

numbness, swelling and stiffness in her hands, fatigue and headaches.  (Tr. 282.)

Diagnostic testing revealed the presence of an autoimmune disease which Dr. Srock

determined was most closely related to lupus.  (*Id.*, 282, 285).  Plaintiff was prescribed

medication for pain and fatigue.  (*Id.* 282).  In May 2008, Dr. Srock diagnosed Plaintiff

with fibromyalgia after noting 16 tender points on examination.  (*Id.* 298).

　　　A "Form: Lupus (SLE) Residual Functional Capacity Questionnaire" was

completed by Dr. Srock on August 12, 2008.  (Tr. 320-25, Ex. 3F.)  She opined that due

to Plaintiff's chronic fibromyalgia and undifferentiated connective tissue disease, Plaintiff

would only be able to walk one block without rest; sit 45 minutes at a time and 4 hours

total out of an 8 hour day; stand for 15 minutes at a time and for a total of 2 hours in an

8 hour day; would need to shift positions at will from sitting, standing, walking; would

have to have unscheduled breaks; could only occasionally lift less than 10 pounds;

could only occasionally twist, rarely stoop and never crouch or climb stairs, and that she

would be limited in using her hands, fingers, and arms to 20% of an 8 hour work day.

(*Id.*)  Dr. Srock stated as an objective basis for these findings that Plaintiff has diffuse

pain in muscles and joints and findings on examination.  (*Id.* 320).

　　　Dr. Srock also opined in that RFC form that Plaintiff had severe fatigue and

malaise and poor sleep as well as a possible component of depression.  (*Id.* 321.)

When asked how often during a typical workday Plaintiff's experience of fatigue, pain, or

other symptoms would be severe enough to interfere with attention and concentration

needed to perform even simple work tasks, Dr. Srock responded "[f]requently."  (*Id.*)

She limited Plaintiff to "low stress jobs." (*Id.* 322.)  Finally, she found that one of Plaintiff's prescribed medications may cause drowsiness. (*Id.*)

Dr. Srock then filled out another RFC form in December 2009, finding that due to Plaintiff's fibromyalgia and depression (and possibly lupus or SLE), Plaintiff would be able to walk six blocks without rest; sit more than two hours at a time and for at least 6 hours in an 8 hour day; stand for 1 hour at a time and for a total of 2 hours in an 8 hour day; would need to shift positions at will from sitting, standing, walking; would have to have unscheduled breaks; could only occasionally lift 10 pounds and frequently lift less than 10 pounds; occasional twisting, stooping, crouching and climbing stairs, and that Plaintiff did not have significant limitations in doing repetitive reaching, handling or lifting. (Tr. 387-394, Ex. 8F.)  Further, she found that Plaintiff would miss about two days per month from work. (*Id.* 393.)  She also found that Plaintiff had severe fatigue and poor sleep, seldom experienced symptoms severe enough to interfere with concentration and attention, and that Plaintiff could perform jobs with moderate stress. (*Id.* 390.)  Finally, Dr. Srock found that certain of Plaintiff's medications may cause side effects which have implications for working, that Plaintiff would have good days and bad days from her impairments, and that she would need to miss more than two days of work per month. (*Id.* 390-91.)

The ALJ found that Dr. Srock's opinion in the December 2009 medical questionnaire (Exhibit 8F) "is generally consistent with the opinions of the consultative examining physician in Exhibit 6F and with the State agency findings in Exhibit 1F in indicating the claimant retains significant work capacity." (Tr. 22.)  He further stated that

Dr. Srock's opinions as to lifting, sitting and standing/walking "support the findings made in this decision." (*Id.*)  The ALJ did not state what actual weight he gave to Dr. Srock's opinion overall, only stating at one point in his decision that he gave "*more weight*" to the "better supported opinions from Dr. Srock in Exhibit 8F" and another opinion.  (*Id.* 23.)  The ALJ did, however, reject certain of the limitations assessed by Dr. Srock:  a need to shift positions at will, a need to take two 10-minute breaks a day, and a finding that Plaintiff could only lift ten pounds occasionally.  (*Id.* 22.)

I find error with the ALJ's assessment of Dr. Srock's opinions.  First, the ALJ did not properly follow the treating physician rule in weighing Dr. Srock's opinions as a treating physician.  The Tenth Circuit recently stated that its "case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Id.*  "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.*  The ALJ did not determine in this case whether Dr. Srock's opinions as a treating specialist were entitled to controlling weight.

Further, "[e]ven if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how

much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. "If this is not done, a remand is required." *Id. Krauser* cited the relevant ruling, which explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported . . . or is inconsistent with the other substantial evidence in the case record *means only that the opinion is not entitled to 'controlling weight', not that the opinion should be rejected.* Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§] 404.1527 1nd 416.927. *In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.*

*Id.*, 638 F.3d at 1330 (quoting SSR 96-2p, 1996 WL 374188, at *4) (emphasis added). Thus, a deficiency as to the conditions for controlling weight *raises the question* of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id.* (emphasis in original).

In *Krauser*, the Tenth Circuit found that the ALJ's assessment of a treating physician's opinion was "patently inadequate for the distinct reason that it ends halfway through the required two-step analysis:  the ALJ simply concluded that 'Dr. Lambert's opinion ... cannot be given controlling weight' and then *said no more about it." Id.* (emphasis in original).  Here, however, the ALJ did not even discuss or consider the first step—whether Dr. Srock's opinions, in whole or in part, are entitled to controlling weight, let alone the second step.  Finally, the ALJ did not actually state what specific weight he was giving to Dr. Srock's opinions.  The Tenth Circuit has made clear that "an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are

'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight.'" *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quotation omitted); *see also* SSR 96-2p, 1996 WL 374188, at *5 (1996).  Based on the foregoing, this case must be remanded for a proper assessment and weighing of Dr. Srock's opinions.

The Commissioner argues, however, that it is the ALJ's responsibility to assess Plaintiff's RFC, and that no doctor's opinion is alone conclusive on this issue.  (Def.'s Resp. at 10.)  The Commissioner improperly downplays the role of a treating physician's opinion as to work-related limitations.  The Tenth Circuit has made clear that where a treating physician gives specific work-related functional limitations, those opinions are medical opinions entitled to controlling weight.  *Krauser*, 638 F.3d at 1330-1332.  In other words, these are medical findings that the ALJ must determine the consequences of for purposes of the RFC, "i.e., that with those limitations, [the claimant] would not be able to perform sedentary work."  *Id.* at 1332.  The *Krauser* Court further explained:

> That is precisely how the inquiry should proceed, with the treating physician performing her medical role and the ALJ left to his role as adjudicator. Of course the medical findings as to work-related limitations would, if accepted, impact the ALJ's determination of RFC—they always do, because that is what they are for—but that does not make the medical findings an impermissible opinion on RFC itself. If doctors could only give opinions on matters that could not affect RFC, medical opinions would be inherently useless in disability determinations.

*Id.*  In this case, Dr. Srock made medical findings which impact the RFC that must be assessed under the controlling weight standard.

The Commissioner also argues, however, that the ALJ is charged with the duty to weigh the evidence and resolve any conflicts and that the ALJ "carried out his adjudicatory role in a fair and legally appropriate manner."  (Def.'s Resp. at 10.)  Implicit in this argument is that the ALJ adequately considered Dr. Srock's opinion.  The ALJ's analysis was, however, plainly insufficient to satisfy the two-step test discussed above.  A similar argument was made and rejected in *Wade v. Astrue*, No. 07-6154, 2008 WL 193236 (10th Cir. Jan. 23, 2008) (unpublished).[2]  The Commissioner argued in *Wade* that the ultimate weight assigned to the opinion of a treating physician was "implicit" where the ALJ's RFC determination appeared to give the physician's opinion some credence.  *Id.* at *3.  The *Wade* court rejected this argument, stating that "the "ALJ herself provided no such analysis."  *Id.*  Further, as in this case, "the ALJ discussed *none* of the [§ 404.1527(d)] factors and made no [specific] finding as to weight."  *Id.*  The *Wade* Court concluded:

' "We cannot simply presume the ALJ applied the correct legal standards in considering Dr. [Herndon's] opinion. We must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion."

*Id.* (quotation omitted); *see also Harper v. Astrue*, No. 10-5136, 2011 WL 2580336, at *3 n. 1 (10th Cir. June 30, 2011) (unpublished) (ALJ's statement that he had considered opinion evidence was a conclusory statement that did not satisfy his responsibility to give reasons for the weight he assigned to a treating physician's opinions).

---

[2]  I cite this and the other unpublished opinions in this Order because the cases have persuasive value with respect to material issues in the case.  10th Cir. R. 32.1(A).

I also find that the ALJ erred in choosing not to adopt certain of Dr. Srock's limitations.  Specifically, while Dr. Srock indicated a need to shift positions at will, the ALJ stated that opinion was "not afforded weight as it is inconsistent with the more specific statement from Dr. Srock that the claimant can sit greater than two hours at a time, stand one hour at a time, and walk six blocks at a time—limitations and durations" that the ALJ stated he incorporated into the RFC in his decision.  (Tr. 22.)  The ALJ also rejected Dr. Srock's opinion that Plaintiff needs two 10-minute breaks a day, stating that "there is no evidence to support a finding that the claimant requires such breaks in addition to normal work-day breaks."  (*Id.)*  I find that the ALJ erred in rejecting these limitations.  The Tenth Circuit is clear that "'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'"  *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (emphasis in original) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)).

Here, the ALJ did not rely on contradictory medical evidence in rejecting these two limitations, only his own improper speculation and lay opinion.  Further, a need to shift positions at will is not inconsistent with a finding that Plaintiff claimant can sit greater than two hours at a time, stand one hour at a time, and walk six blocks at a time. These are entirely different issues as recognized by the fact that these are separate questions in the RFC form.

-12-

The Commissioner argues, however, that given the lack of any supporting explanation from Dr. Srock about why these limitations were warranted, and considering that two other doctors (Drs. Graesser and Chambers) did not think these restrictions were required, the ALJ reasonably declined to incorporate them in his RFC determination.  I reject these arguments.  First, if the ALJ thought that Dr. Srock did not adequately explain why these limitations were warranted, he had a duty to contact Dr. Srock for clarification on this issue.  *McGoffin*, 288 F.3d at 1252 (citing 20 C.F.R. § 404.1512(e)(1) (2001)).  Second, to the extent the Commissioner argues that the ALJ properly relied on the opinions of Drs. Graesser and Chamber to discount Dr. Srock's findings, this is error since the ALJ did not conduct the required analysis to first determine whether Dr. Srock's opinions were entitled to controlling weight and, if not, what weight should be given to Dr. Srock's opinions giving her proper deference as a treating specialist in the field of rheumatology.

On remand, the ALJ must first conduct the required analysis as to Dr. Srock.  If Dr. Srock's opinions are not given controlling weight, the ALJ is required to examine the opinions of Drs. Chambers and Graesser to see if they outweigh Dr. Srock's opinions, not the other way around.  *Goatcher v. U.S. Dept. of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995).  If the ALJ chooses on remand to give weight to the opinions of Drs. Chambers or Graesser or some other medical provider, the ALJ must make clear what specific weight he gives to each provider.  Also on remand, the ALJ should keep in mind that "[t]he opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion

of an physician who has never seen the claimant is generally entitled to the least weight of all." *Robinson*, 366 F.3d at 1084.

The ALJ also did not accept Dr. Srock's finding in Exhibit 8F that Plaintiff could only occasionally lift 10 pounds.  Instead, he incorrectly found that Dr. Srock opined that Plaintiff can lift and carry 20 pounds occasionally.  (*Id.*)  He then relied on his erroneous finding to support the RFC assessment that Plaintiff can lift and carry 10 pounds frequently and 20 pounds occasionally.  While the ALJ argues that this was not significant, I disagree.  A finding that Plaintiff can only lift ten pounds occasionally means that Plaintiff can not perform light work, which the ALJ found Plaintiff could do.  This would eliminate two of the three jobs that the vocational expert testified a hypothetical person with Plaintiff's RFC could do.  On remand, the ALJ must take into account the fact that Dr. Srock found that Plaintiff could lift only ten pounds occasionally.  If this opinion of Dr. Srock is rejected, the ALJ must state specific, legitimate reasons for rejecting this limitation.

I also note that the ALJ did not address other significant findings of Dr. Srock, including the fact that Plaintiff's medication caused her side effects that impacted her work and the fact that Plaintiff would miss more than two or more days of work.  He also did not adequately address her findings of severe fatigue and how these impact Plaintiff's ability to work.  The Tenth Circuit has made clear that an ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'" *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)).

-14-

I now turn to Dr. Srock's opinions in Exhibit 3F, an earlier RFC form she completed.  The ALJ stated he gave "minimal weight" to Dr. Srock's opinion in Exhibit 3F, finding that it was not "persuasive as it is not supported by objective findings" and the limitations "are based in part on the claimant's subjective complaints."  (*Id.* 21.)  I find that these reasons are not legitimate grounds to discount Dr. Srock's opinions in that exhibit.  First, as noted previously, the ALJ did not conduct the proper weighing of Dr. Srock's opinions, including the opinions in Exhibit 3F.  Second, the ALJ's reliance on the lack of objective findings and reliance on Plaintiff's subjective complaints is error given Dr. Srock's diagnosis of fibromyalgia.  *See* Section II.B.2, *infra.*

Finally, to the extent Dr. Srock assessed significant hand, finger, and arm limitations in August 2008 in Exhibit 3F (Tr. 325), but found that Plaintiff had no upper extremity limitations in her December 2009 assessment (*id.* 392), the opinions appear to be in conflict.  There are also other conflicts between the two forms.  The fact that a conflict exists between the two opinions is further indicated by the fact that Dr. Srock indicated in December 2009 that the restrictions and limitations in Exhibit 3F still applied as of that date (*Id.* 368), but then stated in Exhibit 8F that the findings in that form (some of which are in conflict with Exhibit 3F) related back to March 2007.  (*Id.* 394.)  20 C.F.R. § 404.1512(e)(1) requires that the ALJ contact the medical source to "seek additional evidence or clarification . . . when the report from your medical source contains a conflict or ambiguity that must be resolved. . . ."  The ALJ did not do this, which also is a basis for remand.

Plaintiff also argues that the ALJ erred in dismissing the opinions of Daniel Ryan FNP-C, who she has been seeing at Dr. Harry Walter's office since September 2008. The Commissioner argues that in sharp contrast to the well-supported opinions of Drs. Srock, Graesser, and Chambers who opined that Plaintiff retained significant work capacity, Plaintiff urges the Court to find her fibromyalgia disabling based on her treating nurse practitioner's conclusory opinions and that the ALJ properly chose to give no weight to these findings.

Nurse practitioner Ryan completed a Physical Residual Functional Capacity Questionnaire finding that Plaintiff had trigger points and generalized pain consistent with fibromyalgia.  (Tr. 397-402, Ex. 10F.)  He found in this form that Plaintiff could only walk ½ a block, sit for 20 minutes at a time, stand for 10 minutes at a time, and sit, stand, or walk for about two hours out of an eight hour day.  He also found that she would need to shift positions at will, need unscheduled breaks every 30 minutes, would only be able to use her hands and arms for reaching, grasping, and fingering 10% of an eight hour day, and would miss more than four days of work per month.  (*Id.* 399-401.) Nurse practitioner Ryan also authored a letter at Exhibit 9F which states that Plaintiff "is currently unable to work related to her diagnosis of Fibromyalgia, Lupus and Chronic pain."  (*Id.* 396.)

The ALJ rejected the opinions of Nurse practitioner Ryan in their entirety.  He stated that these opinions were not from an acceptable medical source and that his opinion about being unable to work was on an issue specifically reserved to the Commissioner.  (Tr. 23.)  The ALJ also found that "there are no medical signs and

findings that support the opinion of rather extreme limitations described in the assessment at Exhibit 10F. . . ." (*Id.* 24.)  Further, he stated that "there is minimal objective evidence to support th[is] opinion[] as [it does] not appear to be supported by examination findings and is inconsistent with the claimant's activities of daily living, as well as with the better supported opinions from Dr. Srock in Exhibit 8F and the detailed examination and opinion at Exhibit 6F."  (*Id.*)  Again, I find that the ALJ did not adequately weigh the opinions of Mr. Ryan.

As the Commissioner notes, the ALJ must consider the same factors when weighing opinions from non-acceptable medical sources (like Mr. Ryan) as when weighing opinions form acceptable medical sources.  SSR 06-03p, 2006 WL 2329939, *4 (2006).  SSR 06-03p notes that opinions from such sources may even be entitled to greater weight than that of a treating physician.  *Id.* at *5.  Here, there is no evidence that the ALJ weighed the relevant factors in regard to Mr. Ryan.  The only issue he looked at, other than noting that Mr. Ryan is not an acceptable source, is the fact that the impairments were not supported by his progress notes or the opinions of the physicians in the case.  However, the Tenth Circuit has stated that "the ALJ's apparent failure to consider any factor other than supportability makes the ALJ's reasoning insufficient."  *Andersen v. Astrue*, No. 05-4305, 2009 WL 886237, at *6 (10th Cir. April 3, 2009) (unpublished).  Further, some of nurse practitioner Ryan's opinions were supported by Dr. Srock, including his finding that Plaintiff would need to shift positions at will, would need unscheduled breaks, had limitations in being able to use her hands and arms for reaching, grasping, and fingering, and that she would miss days of work each

month due to her impairments.  Thus, the ALJ was incorrect in simply dismissing Mr. Ryan's opinions as unsupported.

To the extent the ALJ rejected Mr. Ryan's opinions because he felt they were inconsistent with Plaintiff's daily activities, this was improper as an ALJ is only entitled to reject medical findings based on other medical evidence and not his own lay opinion. *McGoffin*, 288 F.3d at 1252; *see also Fuller v. Astrue*, No. 10-2037-JWL, 2011 WL 209527, at *14 (10th Cir. Jan. 21, 2011) (unpublished).  As to the decision to reject Mr. Ryan's opinions because there was minimal objective evidence to support them based on examination findings, I note that this is an improper ground to reject this when it comes to fibromyalgia.  *See* Section II.B.2, *infra*.  Further, since fibromyalgia is diagnosed largely through a patient's subjective complaints (*id*.), this also was not a basis to reject nurse practitioner Ryan's opinions.

I also find problematic the ALJ's finding that Mr. Ryan's opinions are inconsistent with his progress notes or other evidence, because the ALJ does not explain this.  This is similar to the *Krauser* case, where the ALJ failed to give controlling weight to a treating doctor's opinion in a questionnaire because, among other things, it was inconsistent with other evidence including her treatment records.  638 F.3d at 1331. The court stated that this finding was "stated in conclusory fashion, without reference to 'those portions of the record with which [the doctor's] opinion was allegedly inconsistent.'"  *Id.* (quoting *Hamlin v. Barnhart,* 365 F.3d 1208, 1217 (10th Cir.2004)). While it found that "[i]t may be possible to assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, . . . that is best left for the ALJ

-18-

himself to do in the proceedings on remand." I find the same analysis applies in this case, and that the ALJ must explain how Nurse Ryan's opinions are inconsistent with his notes or the other evidence.

The Commissioner argues, however, that there is no evidence that Mr. Ryan was trained in treating fibromyalgia. However, this argument is equally applicable to the opinions of Drs. Chambers and Graesser and the state agency provider, which the ALJ purported to give weight to. *See* http://www.myalgia.com/Find_a_specialist.htm ("Rheumatologists, physiatrists and pain specialists are the physicians who most commonly specialize in diagnosing and treating fibromyalgia. Nurse practitioners and physicians assistants are sometimes a good option if you can't find an empathetic doctor; some specialize in fibromyalgia and become very proficient in its treatment. There is, however, a wide variation of expertise, training and interest amongst individual health care providers in treating fibromyalgia patients.). The ALJ should have inquired about Mr. Ryan's expertise on this issue before rejecting his opinions on this basis.

The Commissioner also asserts that Mr. Ryan's notes did not give any insight into why he thought Plaintiff was more limited than indicated by Drs. Srock, Graesser, and Chambers; his notes simply recited Plaintiff's subjective complaints and noted treatment medicines. However, Mr. Ryan was not asked to give insight into why he imposed the limitations he did; accordingly, this is not a basis to reject his opinions. Further, an ALJ cannot rely on the fact that a medical source did not adequately document his findings; instead, the ALJ is required to contact the doctor for clarification on this issue. *McGoffin*, 288 F.3d at 1252; *Daniell v. Astrue*, No. 09-2310, 2010 WL

2588174, at *4 (10th Cir. June 29, 2010) (unpublished); *see also Washington v. Shalala*, 37 F.3d 1437, 1441 (10th Cir. 1994) (ALJ erred by rejecting opinions of physicians for not giving any examples or incidents that explained their opinions, as their statements about the plaintiff's condition were "specific medical findings" that the ALJ errs in rejecting in the absence of conflicting evidence).

Finally, to the extent Mr. Ryan opined that Plaintiff was "unable to work," the Commissioner argues that this opinion was entitled to no weight because it is a dispositive determination reserved to the Commissioner. This is not completely accurate. While an ALJ is correct to note that an opinion of total disability is an issue reserved to the Commissioner, "such an opinion may not be disregarded, and 'the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.'" *Fuller*, 2011 WL 209527, at *10; *see also* SSR 96-5p, 1996 WL 374183, at * 1 ("opinions from any medical source about issues reserved to the Commissioner must never be ignored"). There is no indication in the ALJ's decision that he properly evaluated this opinion.

Based on the foregoing, I find that this case must be remanded for a proper weighing and consideration of the medical evidence. The ALJ must conduct the proper two-step analysis as to whether Dr. Srock's medical opinions are entitled to controlling weight. If the ALJ chooses not to give controlling weight to Dr. Srock's opinions, he must still give deference to her opinions and state what lesser weight, if any, he is giving the opinions after consideration of the appropriate factors. If the ALJ rejects her opinions, he must state specific, legitimate reasons for doing so. The ALJ may weigh

the other medical evidence only if he first determines that Dr. Srock's opinions are not entitled to controlling weight, stating what specific weight he chooses to assign them. The ALJ must also give consideration to the fact that nurse practitioner Ryan is a treating source, and assess the appropriate factors in determining what weight to give his opinions.

2.   Whether the ALJ Erred By Not Giving Enough Weight to the Symptoms of Plaintiff's Fibromyalgia in the RFC

I now turn to Plaintiff's argument that while the ALJ found fibromyalgia to be a severe impairment, he gave no weight to the symptoms of her fibromyalgia because there were no exam findings except for tender points "that would warrant any greater limitations than those found in his decision."  (Tr. at 20-22.)  In other words, he appeared to reject Plaintiff's symptoms because there were no objective findings to support the symptoms.  This impacts the weight to be given treating rheumatologist Dr. Srock's opinions, since they were based in large part on the diagnosis of Plaintiff's fibromyalgia.  I find that the ALJ erred in his analysis.

The Tenth Circuit has made clear that fibromyalgia is not diagnosed through objective findings.  *Gilbertson v. Astrue*, No. 06-1137, 2007 WL 1068104, at *4-5 (10th Cir. April 11, 2007); *Moore v. Barnhart*, No. 03-3243, 2004 WL 2634571, at *8 (10th Cir. Nov. 19, 2004).  As explained in *Moore*, "[f]ibromyalgia. . . is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue."  2004 WL 2634571, at *8 (quotation omitted).  "It is a chronic condition, causing 'long-term but variable levels of muscle and joint pain,

stiffness and fatigue.'" *Id*. (quotation omitted).  "Fibromyalgia can be disabling."  *Id*.  The

disease "is diagnosed entirely on the basis of patients' reports and other symptoms".  *Id*.

It is the absence of symptoms ordinarily associated with joint and muscle pain that is

one of the most striking aspects of this disease. . . ."  *Id*.

Here, while the ALJ appeared to at least implicitly recognize at step three that

objective tests were not required as to a fibromyalgia diagnosis since he found that this

was a severe impairment, he then erred by discounting all of Plaintiff's  symptoms from

fibromyalgia based on the lack of objective tests.  This issue was addressed in

*Gilbertson*.  2007 WL 1068104, at *4-5.  There, although the ALJ acknowledged a

doctor's conclusion that the claimant had fibromyalgia, "the ALJ erred in not otherwise

addressing that impairment or the limitations it may cause in determining to give the

[doctor's] opinion minimal weight."  *Id*.  Instead, the ALJ relied on objective test results.

*Id*.  The court noted that "the lack of objective test findings noted by the ALJ is not

determinative of the severity of her fibromyalgia."  *Id*.; *see also Boston v. Astrue*, No,

2011 WL 4914759, at *9 (S.D. Ohio Sep. 15, 2011) (unpublished) ("[I]t was erroneous

for the ALJ to determine fibromyalgia is a severe impairment which significantly limits

Plaintiff's ability to perform basic work activities and then fail to evaluate or consider any

functional limitations associated with fibromyalgia.").  From the foregoing, it is clear that

the ALJ misunderstood the nature of fibromyalgia and erred by not properly considering

what limitations the symptoms might cause Plaintiff in her RFC.

The ALJ also erred by not properly considering Plaintiff's pain.  The evidence of

pain is replete throughout the record, and no doctor has opined that Plaintiff is not

-22-

credible as to her complaints of pain.  Indeed, the ALJ himself finds that Plaintiff suffers

from a severe pain disorder and that Plaintiff's impairments could reasonably be

expected to cause the alleged symptoms complained of by Plaintiff, including pain.  (Tr.

17, 20.)  However, he then failed to evaluate how Plaintiff's pain may impact her ability

to work.  He also failed to evaluate many of the relevant factors required to be

considered, even though he noted the factors by rote in his decision.  (*Id.* 19.)

The ALJ did not evaluate, for example, Plaintiff's attempts to treat the pain, her

willingness to try treatment, the combined effects of Plaintiff's psychological and

physical impairments, and the dosage, effectiveness and side effects of medications as

opined to by her treating physician.  This is similar to the facts in *Carpenter*, where the

Tenth Circuit found that "[t]he ALJ's purported pain analysis is improper boilerplate

because he merely recited the factors he was supposed to address and did not link his

conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find

relief from pain, and all the drugs she has been prescribed for pain, resulted in a

conclusion that she is unlimited in any regard by pain or the side effects from her pain

medication."  *Id.*, 537 F.3d at 1268.  Also, while the ALJ noted the absence of an

objective medical basis for the severity of Plaintiff's complaints, that is "'just one factor

to be considered in evaluating the credibility of the testimony and complaints.'"  *Luna v.*

*Bowen*, 834 F.2d 161, 165 (10th Cir. 1987) (quotation omitted).  Given the fact that

Plaintiff's pain at least in part comes from fibromyalgia, the lack of an objective medical

basis for her pain may be irrelevant.

Further, the ALJ appeared to entirely discount Plaintiff's pain simply because "the record does not support a disabling level of severity such that she is precluded from all work activity." (Tr. 21.) Even if the pain is not by itself disabling, the ALJ must still consider the impact of a claimant's pain on her ability to work. *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. June 17, 1994) (unpublished). "The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers.*'" *Id.* (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (further quotations omitted). "A vocational expert is ordinarily required to determine what limitation . . . pain might impose on [Plaintiff's] ability to do   . . . work." *Id.*

As to Plaintiff's medications, Plaintiff testified at the hearing that her medications cause her memory problems, constipation, dizziness, and headaches. (Tr. 43.) The fact that Plaintiff's medications cause her side-effects was substantiated by Dr. Srock, as discussed previously. The impact of side effects of medications must be considered in assessing the RFC, as they could affect the ability to work in a regular work setting on a regular and continuous basis, and the failure to consider them requires a remand. *See Hamby v. Astrue*, No. 07-5051, 2008 WL 63485, at *4 (10th Cir. Jan. 7, 2008) (unpublished) ("The ALJ did not even make a perfunctory comment on . . . Ms. Hamby's . . . testimony concerning medication side effects limiting her ability to concentrate, drowsiness, use of an assistive device, and the need to alternate standing and sitting. Thus, in finding Ms. Hamby only partially credible, the ALJ applied incorrect legal standards and failed to articulate his reasoning with sufficient specificity. The legal

flaws in the ALJ's RFC determination and his corresponding credibility findings means that the denial of benefits cannot be affirmed.").

I also note that the ALJ erred by not considering Plaintiff's allegations of fatigue, which are supported by Dr. Srock. *See Clark v. Barnhart*, No. 02-5093, 2003 WL 1909289, at *2-4 (10th Cir. April 22, 2003) (unpublished) (citing *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (remanding where ALJ ignored claimant's allegations of severe fatigue, weakness and swelling, which her condition would reasonably be expected to produce)); *see also Lozano v. Astrue*, No. 06-15935, 2008 WL 833153, at *1 (9th Cir. March 26, 2008) (unpublished) (ALJ erred in not mentioning, "let alone discount[ing], the extensive evidence that Lozano suffered from fatigue as a side effect of his medication. . . . Fatigue is a subjective symptom that the ALJ must consider"). Like fibromyalgia, "pain and fatigue are not necessarily identifiable or measurable by objective diagnostic tests." *Boyer v. Astrue*, No. 07-cv-00994-RPM, 2009 WL 353523, at *1 (D. Colo. Feb. 12, 2009) (unpublished).

The Commissioner argues, however, that the ALJ reasonably found that Plaintiff's allegations regarding her fibromyalgia symptoms were not credible because three physicians (Drs. Graesser, Chambers and Srock) opined that Plaintiff could perform significant work activities despite her impairments.  (Resp. at 11.)  This is a misstatement, at least as it applies to Dr. Srock.  Dr. Srock opined to limitations that could significantly impact Plaintiff's ability to work, including her need to take two breaks a day, the need to shift positions at will, the inability to lift more than ten pounds occasionally, and the fact that she would miss more than two days of work per month.

Further, there is no dispute that Dr. Srock found Plaintiff's continuing complaints of pain to be credible.  As discussed previously, the ALJ was required to determine whether Dr. Srock's opinions were entitled to controlling weight or, if not, weigh the relevant factors and determine what weight to be given to Dr. Srock's opinions before giving weight to opinions of Drs. Graesser and Chambers.  Since this was not done, the reliance on Drs. Graesser's and Chamber's opinions was not reasonable.  Moreover, I note that the ALJ focused much more on the lack of objective findings on examination than the opinions of Drs. Graesser and Chambers regarding her work capacity.  On remand, the ALJ must properly consider the limitations caused by Plaintiff's fibromyalgia and its symptoms, including pain and fatigue, in assessing her RFC.

I also find another error as to Plaintiff's fibromyalgia.  The ALJ correctly noted at step three that there is not a listing for fibromyalgia (Tr. 17), but then proceeded to evaluate the severity of fibromyalgia under Listing 14.09 for inflammatory arthritis.  (*Id.*) That Listing "requires clinically established evidence of inflammation and a history of joint pain, swelling and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in an inability to ambulate effectively or an inability to perform fine and gross movements effectively."  (*Id.*)  The ALJ found that Plaintiff did not meet that listing.

However, as previously noted, fibromyalgia is not diagnosed through objective tests, and "joint swelling is not a symptom of fibromyalgia."  *Moore*, 2004 WL 2634571, at *8.  Thus, it is improper to require this symptom in determining whether fibromyalgia meets a Listing.  This was made clear in *Gilbertson*, where the Tenth Circuit found that

it was appropriate for the ALJ to assess objective findings with respect to Ms. Gilbert's individual joints only when considering her claims of disability based on arthritis and disc disease, which impact the joints, but not fibromyalgia.  2007 WL 1068104, at *4-5.  This shows that Listing 14.09 was probably not a pertinent Listing to compare fibromyalgia to, and I find that the ALJ erred in relying on Listing 14.09 to determine if Plaintiff's fibromyalgia is severe.  This also requires a remand of the case for further fact finding.

On remand, the ALJ must reassess Plaintiff's fibromyalgia at step three, using appropriate Listing(s) that more closely address the symptoms of fibromyalgia.  See SSR 99-2p (April 30, 1999) (noting that for chronic fatigue syndrome that, like fibromyalgia, is not a listed impairment, "the specific findings in each case should be compared to any pertinent listing to determine whether medical equivalence may exist.") I note from my review of the Listings that section 14.00 addresses immune system disorders, including connective tissue disorders that are classified as autoimmune disorders.  (Listing 14.00A.2, 20 C.F.R. Pt. 404, Subpt. P, App 1).  Listing 14.06 may be the most applicable that addresses "Undifferentiated and mixed connective tissue disease."  In determining whether Plaintiff meets a Listing, Listing 14.00 makes clear that the symptoms, including pain, severe fatigue and malaise, may be important factors in determining whether or not an immune system disorder meets a Listing.  These issues are, however, for the ALJ to decide on remand.

3.     Whether the ALJ Erred in Connection with the Credibility Finding

I also find several other errors with the ALJ's finding that Plaintiff is not credible as to her fibromyalgia symptoms.  First, I find problematic the ALJ's decision to penalize

Plaintiff for working for several years even though she was diagnosed with fibromyalgia. (Tr. 23.)  He should consider the fact that this may actually bolster her credibility. This issue was addressed by the Seventh Circuit in *Goble v. Astrue*, 385 Fed. Appx. 588, 592 (7th Cir. July 14, 2010) (unpublished).  It found that "a claimant may force herself to work for years despite suffering from fibromyalgia, *see Hawkins v. First Union Corp.,* 326 F.3d 914, 918 (7th Cir.2003), and Goble testified how much she loved working and how hard it was for her to give it up."  *Id*.; *see also Tyson v. Apfel*, 107 F. Supp. 2d 1267, 1270 (D. Colo. 2000) (finding that the ALJ erred by ignoring evidence that supported Mrs. Tyson's credibility, including her excellent work history—"where a claimant has a good work history, she is entitled to substantial credibility when she then asserts that she is unable to work").

Further, the ALJ should consider on remand that the fact Plaintiff was working part time also actually bolsters her credibility, not detracts from it as found by the ALJ. *See Tyson*, 107 F. Supp. 2d at 1270.  On this issue, the ALJ should take note of the fact that Plaintiff's part time work of ten hours per week was limited.  She testified that she could work the hours anytime throughout the week to accommodate her needs and that while she lifts ten pounds at the job, she has help with heavy lifting because she cannot do this.  (Tr. 43-45).  This testimony does not support a finding that Plaintiff can work on a regular and continuing basis, as found by the ALJ.

Further, I find that the ALJ erred in relying on Plaintiff's daily activities as a basis to reject some of Dr. Srock's and nurse practitioner Ryan's opinions as well as to find Plaintiff not fully credible.  I first note that the daily activities of a claimant do not provide

a basis to reject medical findings of a physician. *McGoffin*, 288 F.3d at 1252 ("Although the court "may not second-guess an ALJ's credibility judgments, such judgment by themselves 'do not carry the day and override the medical opinion of a treating physician that is supported by the record.'") (quotation omitted).

Second, I find that the ALJ selectively applied the evidence regarding Plaintiff's activities, referring to Plaintiff's household activities and socialization with friends along with the fact that she takes care of her three children. (Tr. 20.)  The evidence showed, however, that Plaintiff's daily activities were limited.  Plaintiff testified that she had to take a nap in the afternoon after having done limited chores in the morning.  (*Id.* 50-51.) Dr. Crockett, whose opinion the ALJ found persuasive in other respects (*id.* 17), found that Plaintiff's impairments affect her activities of daily living and socialization "to a significant extent." (*Id.* 352.)  "[L]imited activities in themselves do not establish that one can engage in light or sedentary work." *Talbot v. Heckler*, 814 F.2d 1456, 1462-63 (10th Cir. 1987); *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

Further, the fact that a claimant takes care of her children does not necessarily mean that this was demanding physically, when there is nothing in the record to support that. *See Martinez v. Astrue*, No. 10-5097, 2011 WL 1549517, at *9 (10th Cir. April 26, 2011).  Indeed, Plaintiff's children are not infants or toddlers that may require lifting and substantial care; she testified that her sons are in high school and her daughter is in elementary school. (Tr. 51.)  In short, Plaintiff's care of her children and other sporadic activities do not necessarily support a finding that Plaintiff is unworthy of belief. *Id*. These issues must be properly considered on remand.

4.   Plaintiff's Mental Impairments

Finally, Plaintiff argues that the evidence documents that she is unable to perform the basic mental demands of unskilled work as described in SSR 85-15, 1985 WL 56857 (1985).  That ruling provides that the basic mental demands of competitive, remunerative, unskilled work include the abilities to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  *Id.*, 1985 WL 58657, *4.  A loss in these areas can substantially erode the unskilled sedentary occupational base and would justify a finding of disability.  *Id.*

Here, the ALJ found Plaintiff to have severe mental impairments of depressive disorder, pain disorder associated with both psychological and medical factors, and posttraumatic stress disorder.  (Tr. 17.)  The ALJ found as to Plaintiff's mental RFC that Plaintiff "can understand, remember and carry out routine and repetitive, but not complex, instructions" and that "she should avoid interacting with and serving the public, but can occasionally interact with supervisors and co-workers."  (*Id.* 18.)

As support for the RFC, the ALJ stated that he found Dr. Crockett's evaluation and opinions "persuasive because they are well supported by objective clinical signs and findings" and gave Dr. Crockett's opinions "greater weight than the opinion in Exhibit 10F [the RFC assessment of nurse practitioner Ryan] . . . ."  (*Id.* 25.)  Further, he stated that Dr. Crockett's "opinions appear to be supported by the exam findings and the rest of the record, and are generally consistent with the treating physician opinion [from Dr. Srock] as to mental capacity in Exhibit 8F."  (Id.)  The ALJ did not, however,

-30-

state what specific weight he gave to Dr. Crockett's opinion.  This also was error which must be corrected on remand.

The ALJ's mental RFC findings do appear to be supported in part by Dr. Crockett's assessment.  (Tr. 352-55.)  However, the ALJ completely discounted her findings that did not support his RFC, even though the ALJ stated he gave weight to Dr. Crockett's findings.  Dr. Crockett found, for example, that Plaintiff had extremely slow cognitive function, her pace would be significantly slower than average, and her flexibility, adaptability, and ability to handle stressors is markedly impaired.  (*Id.* 352-353).  She also stated that Plaintiff's "[a]bility to sustain an ordinary routine without supervision is mildly impaired", "[p]ersistence in completing tasks and in sustained concentration is moderately impaired", and "[a]bility to accept instruction or criticism and respond appropriately to others in a work setting is likely to be moderately impaired".  (*Id.* 353.)  Further, she stated that Plaintiff has memory problems and is easily distracted.  (*Id.* 352-53.)

The ALJ did not address these findings of Dr. Crockett or give specific reasons for rejecting them.  This is error that also requires remand.  *Carpenter*, 537 F.3d at 1265; *Confere v. Astrue*, No. 06-4217, 2007 WL 1196520, at *3 (10th Cir. April 24, 2007) (unpublished).  Indeed, even the presence of moderate impairments can impact the ability to work and/or erode the occupational base.  *See Bowers v. Astrue*, No. 07-5114, 2008 WL 794853, at *3 (10th Cir. March 26, 2008) (unpublished).

Consistent with her finding of moderate and even marked impairments in the ability to perform work from a mental perspective, Dr. Crockett assigned Plaintiff a GAF

score of 50 (Tr. 349-53) which indicates "'serious symptoms or serious impairment in social, occupational, or school functioning, such as inability to keep a job.'" *Groberg v. Astrue*, No., 2011 WL 538870, at *5 (10th Cir. Feb. 17, 2011) (unpublished) (quoting *Pisciotta v. Astrue,* 500 F.3d 1074, 1076 n. 1 (10th Cir.2007) (quotation and alterations omitted)).  In *Groberg*, the Tenth Circuit stated that a score within the range of 41 to 50 "demonstrates that [the claimant's] mental impairments were serious and likely to have some effect on his ability to work." *Id.*, 2011 WL 538870, at *5; *see also Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 (10th Cir. Dec. 8, 2004) (unpublished) ("A GAF score of fifty or less  . . . suggest[s] an inability to keep a job.").  This must be considered and addressed by the ALJ on remand.

Finally, the ALJ must, on remand, keep in mind as to both Plaintiff's mental and physical impairments that RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  SSR 96-8p(1), 1996 WL 374184, at *1; *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citing 20 C.F.R. § 416.945(c)).  A "regular and continuing basis" means "'8 hours a day, for 5 days a week, or an equivalent work schedule,' SSR 96-8p, 1996 WL 374184, at *2, and to 'respond appropriately to supervision, coworkers, and customary work pressures in a routine work setting,' SSR 86-8, 1996 WL 68636, at *5."  *Haga*, 482 F.3d at 1208.  Thus, "'[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that [s]he can physically perform certain jobs; it also requires a determination that the claimant can *hold*

whatever job he finds for a significant period of time.'" *Washington*, 37 F.3d at 1442 (emphasis in original) (quoting *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986)).

III.    <u>CONCLUSION</u>

Based upon the foregoing, I find that the ALJ did not properly weigh the treating sources' opinions as well as the other medical evidence.  I also find that the ALJ did not properly assess Plaintiff's fibromyalgia symptoms and that he erred in several other respects in assessing Plaintiff's credibility.  Finally, I find that the ALJ did not properly assess all the restrictions as to Plaintiff's mental impairments and whether they would preclude Plaintiff from regular and continuing work.  Accordingly, I find that this case must be remanded to the Agency for further fact finding on these and the other issues discussed in this Order.  It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated March 12, 2012

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge